*Wales and others* vs. *Nelson.*

## WALES & OTHERS vs. NELSON.

Wales and others gave a bond to indemnify Nelson against all claims against the firm of Wales, Nelson & Wales. Suit was afterwards brought against the firm, and judgment rendered against them. The other defendants, Nelson not joining, filed a motion and had the judgment set aside. Execution having been issued, the amount was paid by Nelson—In an action brought by him on the indemnifying bond, and setting out this judgment, execution and its payment—

Held—

1. That under the plea of *nul tiel record*, defendant was entitled to shew by the record of the proceedings subsequent to the judgment, that the judgment had been set aside.

2. That Nelson could not recover for money paid by him under that judgment—it not being properly a "molestation" within the meaning of the bond. He could only recover for money lawfully collected from him.

## APPEAL from St. Louis Circuit Court.

SHEPLEY *for Appellant, written argument filed.*

SPALDING *for Appellee, insists:*

I. The defendants instruction was properly refused. It asked the court to say that there could be no recovery on the second breach, because the judgment in that breach mention had been reversed by a subsequent judgment, &c.

1. The instruction is confused; it speaks of the judgments being reversed or annulled by a subsequent judgment, which is not the fact; for the last judgment in the case did not effect the former, which had previously beeen settled.

2. There could be a recovery on the second breach, because that breach sets forth a molestta-

tion of Nelson, by reason of a liability of the firm of Wales, Nelson & Co., and a compulsory payment of money to him.

3. The judgment was rendered against them all, notwithstanding defence was made, and Dexter T. Wales who was co-defendant with Nelson in that suit, and was bound by the bond to keep Nelson harmless, failed to do so, so that the bond was forfeited by that molestation, and Dexter T. Wales is estopped from denying the molestation.

4. In that suit the claim sued on was proved to be a liability of the firm of Wales, Nelson & co. against all the members of that firm, and the money was forced from Nelson in consequence of it. Why did not Dexter T. Wales prove payment if it had been paid in the six months?

5. The defendants proved by their own witness Morris Collins, that the debt was a liability of said firm, and there was not a particle of proof that it had ever been paid.

6. The subsequent *non suit* in the case, after the money had been collected on execution, raises no presumption that the debt had been paid within six months, which alone could have prevented a forfeiture.

7. Said subsequent proceedings were improperly admitted in evidence.

II. No exception was taken to the giving of the plaintiff's instruction, therefore no advantage can now be taken of it if wrong. 8 Mo. Rep. 234. Bompart vs. Boyer, 4 Mo. Reps. 18.

III. It does not appear from the bill of exceptions that the whole of the testimony is incorporated therein; it is therefore impossible for the Court to say that there was error in refusing the defendants or giving the plaintiffs instruction. Facts may have been proved, as for instance, admissions, promises, &c., which would have justified the Court.

IV. Orrin Wales was properly excluded from testifying for defendants. He had been one of the firm of Wales, Nelson & co., and on payment of this demand to Nelson by Dexter T. Wales, would be liable to contribution *prima facie.*

1. He was not made competent by the certificate of discharge in bankruptcy, for it does not appear that it was given in evidence. It is said he produced it, but that could be of no avail, unless it were given in evidence.

2. The bill of exceptions does not show that the whole of the testimony given in the case is included in it, a subsequent promise of Orrin Wales to pay or be responsible for his contributory share of this debt, may have been proved, thus making him liable notwithstanding his discharge.

V. The defendants were estopped to deny that the liability on which Nelson was forced to pay the money sued for, was the liability of the firm of Wales, Nelson & co., and therefore the testimony of Orrin Wales was properly excluded.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of debt on a bond brought by Reua Nelson, against Dexter T. Wales, John Smith and William H. White, the former as principal and the latter securities. The condition of the bond was that: "Whereas the firm of Wales, Nelson & Co., of which Dexter T. Wales and Reua Nelson were members, had been dissolved, and that said Nelson had transferred to said Wales, all his interest in the effects of said concern, for certain considerations, to-wit: Six thousand dollars in notes due said concern, then transferred to him, and his own private account due said concern, then declared satisfied, and cancelled, and also a bond of indemnity against the debts due by said concern, that therefore, if the said Dexter T. Wales should well and truly indemnify and save harmless

the said Nelson against all debts, demands and liabilities of said firm of Wales, Nelson & Co., owing, or to be due by said late firm, or for which said late firm was or should be bound, and should discharge or satisfy the same within six months from the date of said bond, so that Nelson should never be molested by or on account of them, or any of them, then said bond should be void, otherwise, it should be and remain in force."

Among other breaches, the declaration sets forth a suit commenced more than six months after the date of said bond, by the South Bridge Bank, against Orrin Wales, Reua Nelson and Dexter T. Wales, composing said firm of Wales, Nelson & Co., which the declaration avers was prosecuted to a judgment, and the execution paid by said plaintiff with costs, &c.

The defendants pleaded: 1st. *Non est factum.* 2d. That said Wales had indemnified and saved harmless the said Nelson. 3d. That said Nelson had not been molested, &c. 4th. *Nul tiel* record as to the suit set out in the breach above referred to. Issues were taken and tried, and the verdict and judgment were for the plaintiff.

On the trial the plaintiff gave in evidence the bond sued on, and the record of the suit of the South Bridge Bank against Wales, Nelson & Wales. This record showed a judgment at the February term, 1843, of the St. Louis Court of Common Pleas, and on execution issued in Dec., 1843, which was returned satisfied by Reua Nelson. The defendants then offered in evidence the records of the proceedings in said case, subsequently to the entry of the judgment, from which it appeared that at the same term (February, 1843,) defendants (Wales)—(Nelson not joining) moved for a new trial; which motion was overruled on the 16th March, 1844; but subsequently on the 16th April, the order was set aside, and the motion sustained, the judgment set aside, and a new trial ordered, and a non suit entered by the plaintiff on the 30th Sep., 1844.

The defendants then offered Orrin Wales, to prove that the debt sued on by the South Bridge Bank, was the individual debt of Nelson (the plaintiff;) but the plaintiff objecting, the witness was excluded on the ground of interest; subsequently the defendants produced a certificate of discharge of said witness as a Bankrupt, and again offered him, but the witness was excluded.

The defendants asked the Court to instruct the jury that the judgment offered in evidence by the plaintiff in this case, was reversed or annulled by the judgment of the Court subsequently rendered, and that plaintiff cannot recover under the second breach, &c. The Court refused this instruction, but instructed the jury, that, if they believed that the plain-

tiff Nelson, paid any money on the execution issued upon the judgment in favor of the South Bridge Bank, against Wales, Nelson & Co., they would find for the plaintiff the amount of such payment, unless the evidence was satisfactory that the debt on which such recovery was had, was not the debt of Wales, Nelson & Co.

A bill of exceptions was taken to the opinions of the Court, and the case brought here by appeal.

The propriety of the judgment in this case seems to depend mainly upon the value of the record offered and given in evidence by the defendants. That record comprehended the proceedings of the Court of Common Pleas, in the case of the South Bridge Bank, against Wales, Nelson & Co., subsequently to the rendition of the judgment. If the judgment in that case be unaffected by the subsequent proceedings, the rejection of the witness, Orrin Wales, could not have have been prejudicial to the defendants. That witness was offered to prove that the debt upon which the judgment against Wales, Nelson & Co. was obtained, was an individual debt of Nelson; but that judgment, so long as it stood, being against Orrin Wales (the witness) Dexter T. Wales & Ruea Nelson, composing the firm of Wales, Nelson & Co., estopped the witness from saying that the recovery was had against him upon the debt of another. That judgment was entered at the February term, 1843; at the same term and on the day succeeding the one on which the judgment was rendered, a motion for a new trial was made by the Wales' (two of defendants) which was ultimately sustained by the Court; the judgment vacated a non suit entered. Can there be any doubt of the right of the Court to vacate the judgment? In Crosswell vs. Bryne 9 Johns R. 289,) it was held that a *vacatur* of a judgment entered on the minutes could not be received to contradict an enrolled judgment, upon the principle adoped by the Courts of that State from the British practice, that Courts will not regard any proceeding as a matter of record until it is enroled, 1 Salk. 329. The decision admits the right of vacating judgments for irregularities or other cases shown, but decides that the evidence in that case was not of the right character. The practice of enrolling judgments does not prevail here. The record introduced by the defendants, then, showed a *vacatur* of the judgment, and this record was clearly admissible under the issue of *nul tiel record.* Was the plaintiff then *molested* within the meaning of the condition of the bond given by the defendants? Did the defendants design to protect Nelson against *illegal* molestations? Or was it not rather the obvious intention of the bond given to protect the plaintiff against *lawful* molestations? There can-

not be any doubt, but that Nelson may recover back any money paid by him upon a judgment subsequently reversed, and it was surely not in the contemplation of the parties to secure the plaintiff against unauthorized exactions, for which he has his remedy.

Judge Scott concuring, the judgment of the Circuit Court is reversed and the cause remanded.